UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-103-GWU

KIMBERLY FAYE HOSKINS,                                          PLAINTIFF,

VS.                         **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity?  If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-103  Kimberly Faye Hoskins

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-103  Kimberly Faye Hoskins

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kimberly Faye Hoskins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an affective disorder, a history of a learning disability, diabetes, hypertension, a history of alcohol abuse, obesity, and headache. (Tr. 13). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 15-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 32-year-old woman with an eleventh grade education and past work as a cashier, packer, and mental retardation aide, could perform any jobs if she were restricted to lifting 50 pounds occasionally and 25 pounds frequently, with a restriction to low stress, job-focused work with simple one- and two-step job instructions, and had a "limited but satisfactory" ability to deal with coworkers, supervisors, the public, and stress. (Tr. 34). The VE responded that there were jobs that such a person could

perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). However, even a decision supported by substantial evidence will not be upheld where the Commissioner has failed to follow his own regulations. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

In the present case, the plaintiff alleged disability beginning October 21, 2006 due to high blood pressure, diabetes, nervousness, and a bipolar disorder. (Tr. 118). She asserted that she felt people at work were against her, and were talking about her or making fun of her, causing her to become nervous and leave work. Her blood pressure would rise, she would have headaches, and throw up. (Id.). She testified at the administrative hearing that she felt she was not able to work with people at her last job, as a packer in a cookie factory, and was told she was not packing cookies fast enough although she was going as fast as she could. (Tr. 23). She described depression, and poor sleep, although medication she was receiving from her local Comprehensive Care Center (CCC) had helped some. (Tr. 27-30).

Medical evidence in the transcript shows that the plaintiff had a treatment relationship with the CCC, and that she was seen beginning in November, 2006, by the staff psychiatrist, Dr. John Schremly. She had sought treatment explaining that

09-103 Kimberly Faye Hoskins

she had mood swings, sometimes staying up for days at a time and "bouncing off of the walls." (Tr. 399). She informed the psychiatrist that she had difficulty with reading comprehension and had tried to get a GED six times. (Tr. 406). Dr. Schremly diagnosed a bipolar I disorder and a learning disorder, and assigned a Global Assessment of Functioning (GAF) score of 50. (Tr. 407). A GAF score in this range reflects serious symptoms or serious impairment in functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Subsequent treatment notes indicate that Dr. Schremly had to try several different medications. (Tr. 426-9). Nevertheless, by August, 2007, he noted only a mild overall improvement. (Tr. 493).[1]

While the CCC treatment was taking place, the state agency referred the plaintiff to Psychologist Kenneth Starkey for an evaluation, which took place on February 16, 2007. (Tr. 414). Apparently no treatment records were provided for Dr. Starkey's review. Despite the plaintiff's complaints of nervousness and feelings of inferiority, Dr. Starkey felt that she was able to focus and sustain attention. (Tr. 415). He appeared to agree that her interpersonal relationships were marked by hypersensitivity to the negative evaluation of others, but opined that her symptoms

---

[1] Dr. Schremly continued to assign a GAF of 50 in October, 2007. (Tr. 527). This note is contained in Exhibit 22F, although there is some indication that it may not have been submitted to the ALJ but to the Appeals Council. (Tr. 514-15). The administrative decision does not discuss any exhibits beyond 19F. (Tr. 17).

caused only mild personal distress and no significant impairment of occupational functioning at the time of the evaluation. He diagnosed a depressive disorder, alcohol dependency in full sustained remission and nicotine dependence in full sustained remission, with a current GAF score of 68. (Id.). A GAF score of 68 would reflect only mild symptoms. DSM-IV-TR, p. 34.

Also admitted into evidence were questionnaires from employers regarding the plaintiff's job performance. One report, completed on the basis of notes left by a supervisor who was no longer with the company, indicated that the plaintiff was unreliable and needed special supervision. (Tr. 135-7). A second questionnaire from a retailer where the plaintiff had worked as a cashier and stocker indicated that she had no problems. (Tr. 138-40). A third questionnaire from the cookie factory was generally positive about the work performance but indicated that the plaintiff had difficulty maintaining attendance and was "talked to about packing cookies at proper speed." (Tr. 141-4).

Dr. Ann Demaree, a state agency psychological reviewer, considered the evidence as of May 16, 2007 and disagreed with an earlier state agency reviewer that the plaintiff did not have a "severe" mental impairment, apparently based largely on the employer reports. (Tr. 487). Dr. Demaree felt that the plaintiff's allegations were partially credible, and completed a mental residual functional capacity form indicating that the plaintiff would have a moderately limited ability to perform acts

10

09-103 Kimberly Faye Hoskins

within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (Tr. 485-6).

The ALJ stated in his decision that "the conclusions of Mr. Starkey are consistent with the record" and he assigned them significant weight. (Tr. 17). The ALJ noted that Dr. Starkey had assigned a GAF of 68 and that this was reflective of mild symptoms, and also noted the psychologist's conclusion that there was no significant impairment in occupational functioning. (Id.). In contrast, he did not mention the treating source Dr. Schremly by name, merely describing "mental health treatment notes" showing a diagnosis of bipolar disorder and learning disorder. Although stating that there was nothing in the treatment notes indicating that the plaintiff would be precluded from a limited range of medium work activity, there was no mention of the treating psychiatrist's low GAF score. (Tr. 16).

In Wilson, the Sixth Circuit held that the Commissioners' regulations at 20 C.F.R. § 404.1527(d) require the ALJ to consider several itemized factors if the opinion of a treating source is not accorded controlling weight. The regulation also

11

provides that the Social Security Administration "will always give good reasons in our . . . decision for the weight we give your treating source's opinion." 378 F.3d at 544. In the present case, Dr. Schremly was not mentioned by name, and although the cursory discussion of his treatment notes suggests that he was not totally overlooked, as was a treating source in <u>Bowen v. Commissioner of Social Security</u>, 478 F.3d 742, 747 (6th Cir. 2007), it is still possible that his opinion, as reflected in the GAF score, was not noticed. Regardless of whatever else may be said regarding the weight given to GAF scores, the ALJ clearly believed that they were entitled to some consideration, since he listed Dr. Starkey's GAF score and explained its meaning.[2] Dr. Schremly was the only treating psychological source to offer an opinion regarding the plaintiff's general functioning, and this opinion was much more consistent with the plaintiff's allegations, which the state agency reviewer deemed partially credible, than with the one-time consultant. Since one of the goals of § 404.1527 is to explain to a plaintiff the ALJ's thought processes

---

[2] There is authority indicating that the GAF score itself does not have to be included in the ALJ's residual functional capacity, see <u>Howard v. Commissioner of Social Security</u>, 276 F.3d 235, 241 (6th Cir. 2002). However, a failure accurately to state evidence used to support the residual functional capacity finding can result in it not being supported by substantial evidence. <u>White v. Commissioner of Social Security</u>, 228 Fed. Appx. 779 (6th Cir. 2009).

09-103 Kimberly Faye Hoskins

when a treating source opinion is not being given controlling weight, the error was not harmless.[3]

The decision will be remanded for further consideration of the treating source opinion.

This the 3rd day of February, 2010.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[3] In addition to essentially ignoring the treating physician's opinion, the rationale in the opinion is somewhat unclear in that it appears to endorse Dr. Starkey's view that there would be no significant mental limitations, while imposing restrictions that are approximately equivalent to those described by Dr. Demaree. In this instance, there is no error since the discrepancy is to the benefit of the plaintiff.